# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

CLOSE ARMSTRONG LLC,     )
         )
    Plaintiff,      )
         )
    v.        )     CAUSE NO. 3:18-CV-270-PPS-MGG
         )
TRUNKLINE GAS COMPANY, LLC,    )
         )
    Defendant.     )
         )

-------------------------------------------------    ----------------CONSOLIDATED WITH:--

RANDALL L. DICKSON and JAYMIE L.   )
DICKSON,     )
         )
    Plaintiffs,     )
         )     CAUSE NO. 3:18-CV-494-DRL-MGG
    v.        )
         )
TRUNKLINE GAS COMPANY, LLC,    )
         )
    Defendant.     )

## OPINION AND ORDER

Pending and ripe before the Court are motions to compel filed by the consolidated Plaintiffs. The scope of discovery has been an ongoing point of contention among the parties in this consolidated case, which raises issues related to the scope of easements on Plaintiffs' respective properties. At issue are easements held by Trunkline Gas Company, LLC ("Trunkline") through which its 100 Line pipeline ("the 100 Line") runs between Texas and Michigan. Generally, Plaintiffs Randall L. Dickson and Jaymie L. Dickson ("the Dicksons") and Close Armstrong, LLC ("Close Armstrong") seek

broader discovery with an eye toward the entire Indiana section of the 100 Line, while Trunkline contends that discovery should be limited to Plaintiffs' properties and the contracts establishing the easements on their properties. Having reached impasses with Trunkline, Plaintiffs now seek the Court's assistance in defining the proper scope of discovery in this case through independent motions to compel that are now ripe and addressed separately below.

Before turning to the pending motions to compel, however, the Court must consider Trunkline's Motion for Leave to File Surreply in Opposition to Close Armstrong's Motion to Compel Discovery ("Motion for Surreply") filed on September 9, 2020. Sur-replies are not contemplated in the Local Rules for this Court and are generally disfavored. *Adams v. Traylor-Wolff*, 2014 WL 3721974, at *1 (N.D. Ind. July 28, 2014). However, surreplies may be warranted if new arguments are raised for the first time in a movant's reply brief. *Meraz-Camacho v. United States*, 417 Fed. Appx. 558, 559 (7th Cir. 2011). Here, Trunkline seeks the Court's permission to file a surreply arguing that Close Armstrong's reply brief [DE 163] advanced a new legal theory and cited two new cases in support of that theory. Yet Close Armstrong's reply brief only presents legal authority to rebut arguments in Trunkline's response brief without raising any new issues or arguments. Therefore, Trunkline's Motion for Surreply should be denied.

## I.   RELEVANT BACKGROUND COMMON TO BOTH MOTIONS TO COMPEL

Through their declaratory judgment complaints, Plaintiffs seek a judicial declaration of Trunkline's rights concerning its easements on their properties. In Washington Township, Starke County, Indiana, Trunkline's 100 Line pipeline crosses

both the Dicksons' and Close Armstrong's properties. Trunkline obtained easements on those properties in 1959 when it executed Right-of-Way Agreements with the former property owners. The Dicksons and Close Armstrong now wish to place their land with the Agricultural Conservation Easement Program sponsored by the United States Department of Agriculture but have been unable to do so because of the terms of the Trunkline easements they now seek to clarify.

With common issues of law and fact, the Dicksons' action was consolidated into Close Armstrong's action. [DE 41]. Before consolidation, Close Armstrong served Trunkline with its First Set of Interrogatories and First Request for Production of Documents on July 12, 2018. Dissatisfied with Trunkline's lack of discovery responses, especially regarding other Trunkline easements in Starke County and Trunkline's potential "future plans" of modification or development of its pipeline, Close Armstrong filed its first motion to compel on September 21, 2018. [DE 21, 22]. After a motion hearing on May 9, 2019, the Court denied Close Armstrong's motion without prejudice and bifurcated the case pushing Close Armstrong's concerns about the scope of the easement into Phase II. [DE 64].

Phase I was completed on January 21, 2020, when the Court granted summary judgment in part to Trunkline finding that the plain language of the Right-of-Way Agreements executed in 1959 granted Trunkline one floating easement over each Plaintiff's property with the right to "lay additional pipelines that need not be parallel to the existing pipeline and the right to alter the source of its existing 100 Line." [DE 117 at 31]. With that, Phase II began addressing the question of "whether the easement on

each property has become subject to an equitable limitation or fixed by selection, use, or consent under Indiana law, and what the scope of the one easement ultimately will be under this mixed question of law and fact." [*Id.*].

Trunkline and Plaintiffs now dispute the degree to which discovery is proper as to other landowners' properties and easement agreements (*i.e.*, "similarly situated" properties or easements) based on their disparate theories of the case. Advocating a "four corners" contract law approach, Trunkline contends that discovery should be strictly limited to the Plaintiffs' respective Right-of-Way Agreements and their respective properties. The Dicksons and Close Armstrong, however, rely on Indiana precedent defining the scope of an easement with unclear dimensions to support their position similarly situated properties and easements can be used to determine the scope of the easements on their own respective properties.

## II.   ANALYSIS

Information is discoverable if it is nonprivileged and

is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). This Court has broad discretion in deciding whether to compel discovery and may deny discovery to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c); *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495-96 (7th

Cir. 1996). When ruling on a motion to compel, "a district court should independently determine the proper course of discovery based upon the arguments of the parties." *Gile*, 95 F.3d at 496.

Although the "burden 'rests upon the objecting party to show why a particular discovery request is improper[,]'" *Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 478 (N.D. Ind. 2009) (quoting *Kodish v. Oakbrook Terrace Fire Prot.*, 235 F.R.D. 447, 449–50 (N.D. Ill. 2006)) "the proponent of a motion to compel discovery still bears the initial burden of proving that the information sought is relevant." *United States v. Lake Cnty. Bd. of Comm'rs*, No. 2:04 CV 415, 2006 WL 978882, at *1 (N.D. Ind. Apr. 7, 2006) (internal quotation omitted); *see also Greenbank v. Great Am. Assurance Co.*, No. 3:18-cv-00239-SEB-MPB, 2019 WL 6522885, at *3 (S.D. Ind. Dec. 4, 2019). Relevancy under Fed. R. Civ. P. 26 (b)(1) is "construed broadly to encompass 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

When the discovery request is facially relevant, the party opposing the request is burdened with establishing lack of relevance or that "the likelihood of discovering relevant evidence is so minimal that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Vajner v. City of Lake Station, Ind.*, No. 2:09-CV-245, 2010 WL 4193030, at *2 (N.D. Ind. Oct. 18, 2010). This burden cannot be met by the "reflexive invocation of the same baseless, often abused, litany that the requested discovery is vague, ambiguous, overly broad, unduly

5

burdensome, or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Cunningham*, 255 F.R.D. at 478. Instead, the objecting party must show with specificity that the request is improper. *Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 254, 2002 WL 416949 (S.D. Ind. 2002). On the other hand, when the discovery request is overly broad or relevancy is not apparent, the requesting party must establish relevancy. *Vajner*, 2010 WL 4193030, at *2.

### A.   The Dicksons' Motion to Compel [DE 141]

#### 1.   Relevant Background

After serving two sets of interrogatories and requests for production on Trunkline in the spring of 2019, the Dicksons served Trunkline with their Amended Second Set of Requests for Production of Documents as part of their Phase II discovery efforts on January 29, 2020. Trunkline served its responses on April 24, 2020.

In responding to the Dicksons' written discovery requests, Trunkline presented general objections to all the requests based on relevance, proportionality, undue burden, and violations of attorney-client privilege and the work product doctrine before responding with specificity to each request. Consistent with its four corners theory and its general objections, Trunkline specifically objects *inter alia* to producing information regarding "similarly situated" easements on properties that the Dicksons do not own. The Dicksons, however, seek complete responses to their First Set of Interrogatories ("First ROGs") and Amended Second Set of Requests for Production ("A2d RFPs"). The Dicksons argue that they are entitled to various information and documents concerning the 100 Line and other proposed or planned pipeline installations or modifications, the

Right-of-Way Agreement, and their property as well as information and documents regarding "similarly situated" properties and 31 properties identified in Exhibit K of Trunkline's brief in response to the Dicksons' Phase I summary judgment motion [DE 81-17]. Additionally, the Dicksons seek production of a privilege log to account for Trunkline's privilege-based objections. Lastly, the Dicksons request a Fed. R. Civ. P. 37(a)(5)(A) award of expenses, including attorney fees, associated with the litigation of their Motion to Compel.

### 2.    Local Rule 37-1 Certification

Trunkline contends that the Dicksons' Motion is premature. Under Fed. R. Civ. P. 37(a)(1), a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." That certification must include the date, time, and place of any conference or attempted conference and name all participants. N.D. Ind. L.R. 37-1(a)(1)–(2). The Court may deny any motion that fails to include the required certification. N.D. Ind. L.R. 37-1(b). Written, telephonic, or email communication satisfies Rule 37(a)(1) so long as the parties personally engage in two-way dialogue and meaningfully discuss the discovery dispute "in a genuine effort to avoid judicial intervention." *Vukadinovich v. Hanover Cmty. Sch. Corp.*, Cause No. 2:13-cv-144-PPS-PRC, 2014 WL 667830, at *2 (N.D. Ind. Feb. 20, 2014) (internal quotations omitted).

The parties dispute whether the discovery responses at issue in the instant Motion were discussed in sufficient detail before the Motion was filed. Additionally,

Trunkline contends that the Dicksons' certification improperly "fails to describe (and attach) all the relevant meet and confer correspondence reflecting Trunkline's diligent and good faith efforts." [DE 151 at 6]. In response, the Dicksons argue that even if particular discovery disputes were not adequately discussed, their Motion is still proper because the parties reached an impasse over these discovery responses that would not have been resolved in their meet and confer conferences given Trunkline's immovable stances on the scope of this case and its production of discovery responses to date.

Despite the limited record of communications between the parties before the Court, there was not a total absence of communication. The record shows repeated two-way negotiations from February through April 2020 via phone, email, and meetings before the Motion was filed. Moreover, a deficient Rule 37-1 certification does not automatically justify a "summary denial" of a discovery motion. N.D. Ind. L.R. 7-1(b); *see also Lovato v. Wal-Mart Stores, Inc.*, CAUSE NO. 4:16-CV-84-JTM-PRC, 2017 WL 2274684, at *1 (N.D. Ind. May 25, 2017). The Court favors deciding matters on the merits rather than on technical procedural grounds to avoid, *inter alia*, unnecessary delay in resolution of parties' disputes. This is especially true where—like here—there are indications that the parties will not reach mutual agreement. *See Kokak LLC v. Auto-Owners Ins. Co.*, Case No. 2:18-cv-177, 2019 WL 4439868, at *2 (N.D. Ind. Sept. 17, 2019). Accordingly, the Court will consider the merits of the Dicksons' Motion to Compel despite any deficiencies in their Rule 37-1 certification.

### 3. Similarly Situated Properties

Trunkline's main dispute with the Dicksons involves the production concerning similarly situated properties.[1] The Dicksons' discovery requests included requests for information regarding all "similarly situated" properties along Trunkline's 100 Line pipeline. While negotiating with the Dicksons, Trunkline offered to produce documents on similarly situated properties located solely in Washington Township and the 31 easement amendments ("the 31 Identified Easements") set forth in Exhibits B-2 [DE 81-7] and K [DE 81-17] attached to Trunkline's brief in response to the Dicksons Phase I summary judgment motion. Rejecting this offer, the Dicksons proposed limiting the scope of discovery to similarly situated properties within Indiana, a counteroffer that Trunkline rejected, leading to the instant Motion. These negotiations show Trunkline's willingness to produce information regarding certain similarly situated properties along the 100 Line—namely those within Washington Township as well as the 31 Identified Easements. The question remains, however, whether Trunkline should be compelled to produce information for all similarly situated properties in Indiana.

To meet their burden to establish relevance, the Dicksons rely upon *Panhandle Eastern Pipe Line Co. v. Tishner*, 699 N.E.2d 731 (1998). *See* Vajner, 2010 WL 4193030 at *2. In *Tishner*, the court found that an "easement of indeterminate width is not an easement across the entirety of the property [at issue], rather, it is only an easement over the area reasonably necessary to carry out the purposes of the easement." 699 N.E.2d at 738. In

---

[1] The relevant discovery requests include the Dicksons' A2d RFP Nos. 4, 7, 8, 14, and 15 (1st) and First ROG Nos. 7, 8, 11, and 15 (1st). Trunkline objected to RFPs 7, 8, 14 & 15 and ROGs 11 & 15.

defining the applicable "reasonably necessary" area, the *Tishner* court noted that the 66-foot area at issue had been judicially approved in a separate case regarding pipelines owned and operated by Panhandle "in the same area." *Id.* at 739. According to the Dicksons, this reference in *Tishner* supports their conclusion that all the similarly situated properties in Indiana are relevant to a determination of the scope of Trunkline's easement on their property. Yet, *Tishner* is not quite so clear.

Determining what constitutes a reasonably necessary use of an easement requires a case-by-case consideration of the characteristics of the particular property, the use on that property, and the terms of the easement burdening that property. *See, e.g.*, *Tishner*, 699 N.E.2d at 738–39; *McCauley v. Harris*, 928 N.E.2d 309, 314 (Ind. Ct. App. 2010); *cf. Pinkowski v. Calumet Twp. of Lake Cnty.*, 852 N.E.2d 971, 981–82 (Ind. Ct. App. 2006) ("each piece of real estate is considered unique, without an identical counterpart anywhere else in the world."). While the appellate court in *Tishner* mentions properties in the same geographic area as the easement at issue in that case, it does not suggest that those properties were used by the trial court to define the scope of the relevant easement. In fact, the court indicates that the trial court's determination of the reasonably necessary use of the relevant easement was not challenged on appeal making its "in the same area" reference dictum, which does not dictate the reasonably necessary use analysis here. *See Tishner*, 699 N.E.2d at 739. Thus, *Tishner* offers little if anything to support the Dicksons' claim that they are entitled to information about all 100 Line properties in Indiana.

Additionally, any internal use of neighboring easements by Trunkline for company purposes of assessing the scope of other easements it holds does not support extending discovery in this case to properties throughout Indiana. The examples cited by the Dicksons, showing Trunkline's comparisons to neighboring properties in its own assessments of easements, are located within Washington Township close to the Dicksons' and Close Armstrong's properties. Thus, while adding nothing to the analysis of whether the Dicksons are entitled to information about similarly situated properties throughout Indiana, Trunkline's internal consideration of neighboring easements simply confirms the geographic reach proposed by Trunkline.

With that said, Trunkline still does not agree that discovery related to any property beyond that owned by the Dicksons and Close Armstrong is relevant to this consolidated action based on the Right-of-Way Agreements at the heart of their four-corners theory of the case. Yet Trunkline voluntarily offered to compromise with Close Armstrong and the Dicksons on the scope of discovery by agreeing to produce information relating to the 31 Identified Easements and its easements in Washington Township. As a result, the Court is not persuaded that discovery into the similarly situated properties in Washington Township and the 31 Identified Easements would cause harm enough to outweigh the Rule 26(b) presumption in favor of broad disclosure. *See Vajner*, 2010 WL 4193030 at *2. Having failed to show relevance beyond those boundaries, however, the Dicksons are not entitled to information related to any additional properties on the 100 Line. Furthermore, based upon the Court's previous

11

rulings and guidance, none of the parties should interpret this permission to conduct discovery as authority for a generalized fishing expedition.

### 4.  Remaining Dickson Disputed Discovery Requests

#### a.  Time Period

While the Dicksons contend they are entitled to information dating back to the origination of the Right-of-Way Agreement in 1959, Trunkline disputes whether the Dicksons even requested information dating back to 1959 in their discovery requests. Indeed, the Court cannot "compel production of documents plaintiff has never formally requested." *Kedzior v. Talman Home Fed. Sav. & Loan Ass'n of Ill.*, No. 89 C 4188, 1990 WL 70855, at *3 (N.D. Ill. May 10, 1990). Yet the Dicksons did request information dating back to 1959 through most of its discovery requests, if only implicitly.

In the Dicksons' Amended Second Set of Requests for Production, the Instructions section states that "[u]nless otherwise specified, each Interrogatory and Request calls for information and documents through the date on which the answer or response to that Interrogatory or Request is served." [DE 141 at 135]. Thus, any RFP that does not specify a specific time-period start date implies a request for all documents or information currently in existence, regardless of the date they were created. This is consistent with the reality that information related to the origination of the Right-of-Way Agreement establishing the Trunkline easement on the Dicksons' property is relevant to the Phase II question of whether the easement has "become subject to an equitable limitation or fixed by selection, use, or consent under Indiana law." [*See* DE 117 at 31].

Furthermore, Trunkline's concern about conflicting dates in three of the requests for production is misplaced. RFP Nos. 8, 11, & 12 [DE 141 at 138] define a specific time period for Trunkline's responses, which excepts them from the temporal scope established through the Dicksons' general instruction. Accordingly, Trunkline need only produce information within the time periods specifically requested in those requests unless another objection has merit. Having not challenged the relevancy, proportionality, or burden related to production of information responsive to RFP No. 8, seeking information from 1970 to present, or RFP No. 11, seeking information from November 1, 2017, to present, Trunkline shall produce such information to the extent that have not yet done so.

Trunkline has, however, argued that RFP No. 12, which seeks every document and communication relating to every inspection Trunkline (or its predecessor) performed since 1950 as it pertains to the Dicksons' property, is facially overbroad and disproportional to the needs of this case. According to Trunkline, responding in full to RFP No. 12 as written would lead to production of information related to Trunkline's inspection and maintenance of its 100 Line as well as the Line's historical engineering performance, none of which are at issue in the Dicksons' lawsuit. In attempting to narrow the scope of the request, Trunkline produced electronic records of physical inspections on the Dicksons' property and offered to supplement their production with comparable non-electronic records as far back as possible once accessible.[2] The

---

[2] COVID-19 travel restrictions have apparently prevented Trunkline's counsel from traveling to access the older paper records.

Dicksons reject this compromise contending that they are entitled to review all documents as to the enforcement of the Right-of-Way Agreement and not be held to Trunkline's determination of what is relevant to the claims and defenses in this case.

What is unclear from the Dicksons' argument, however, is why Trunkline's electronic production and promised non-electronic production is substantively incomplete. The Dicksons do not explain with specificity their reasons for needing seventy years' worth of inspection records. Rather, the Dicksons claim, in conclusory fashion, that these documents are relevant because they might aid in establishing their claim that selection, use, consent, course of dealings might have fixed the location of Trunkline's easement on the Dicksons' property.

However, the breadth of RFP No. 12 would generate production of documents related to the performance of the pipeline itself, and thus do not appear to pertain to the scope of the easement at issue in Phase II. The request would also require documents and information spanning back to 1950, nearly a decade before the Right-of-Way Agreement at issue in this case was executed. While some information preceding execution of the Right-of-Way Agreement may inform the scope of the easement, the Dicksons have not demonstrated with specificity how the documents requested through RFP No. 12 would do so. Moreover, Trunkline's records of physical inspections of the Dicksons' property over the long life of the easement at issue, as Trunkline has offered to produce, should generate enough information from which to determine whether further discovery is warranted.

Thus, Trunkline shall produce all the records of actual physical inspections of the Dicksons' property since 1959 as those records are available, either electronically or in hard-copy form, to the extent that have not yet done so in keeping with this Order and its obligations to supplement discovery under Fed. R. Civ. P. 26(e). Should the Dicksons' review of those records generate further questions, they may file a motion seeking leave of court to pursue additional, specified production from Trunkline.

### b.    Other Discovery Issues

The Dicksons also contend that Trunkline's discovery responses to date are deficient, and that Trunkline will seek to avoid supplementing their responses in the future. More specifically, the Dicksons claim that the only document associated with their property that Trunkline has produced is the Right-of-Way Agreement. Yet Trunkline argues that it has produced responsive documents to the extent possible and that their responses have only been limited properly by their objections, the parties' dispute over scope, and travel restrictions imposed by the COVID-19 pandemic. Without addressing many of Trunkline's objections directly, the Dicksons note the limited number of documents Trunkline has produced thus far and infer from that small number that Trunkline's responses are insufficient. Additionally, the Dicksons argue that they are entitled to further production because Trunkline has not met its burden to show that their discovery requests are irrelevant and not proportional. Yet the Dicksons' arguments are misplaced.

No party, including Trunkline, can produce what it does not control or possess. *See* Fed. R. Civ. P. 34(a)(1) ("A party may serve on any other party a request within the

scope of Rule 26(b) to produce [requested information] in the responding party's possession, custody, or control."). Trunkline has produced the documents responsive to ROG Nos. 6, 7, 8, 9, 12 and RFP Nos. 3, 5, 6, 9, 10, 11, 16, 17 in its possession and has indicated its intent to supplement its responses in the future should they locate additional information either electronically or in hard copy form. As the restrictions arising from the COVID-19 pandemic have adapted and vaccinations have become available since the instant Motion was briefed, the Court expects that Trunkline has promptly pursued travel reasonably and safely to complete its discovery obligations.

As to RFP No. 15 (2nd), Trunkline limited its production of responsive documents based on the request, which does not explicitly ask for prior versions of the protocols, procedures, and safety requirements. [*See* DE 141 at 139]. However, Trunkline misinterprets the Dicksons' request. In their RFP Instructions, the Dicksons clearly define "Documents" as "all information in tangible form, of any kind, including the originals, and . . . all forms or drafts, notations, markings, alterations, modifications, changes and amendments." [DE 141 at 133]. Thus, the Dicksons have indeed requested prior versions of documents, which Trunkline must produce.

Trunkline's response RFP No. 13 is also inadequate. This request states: "[o]ther than the language of the Right of Way Easement, produce each and every document, report, memorandum and/or communication, whether written, oral and/or electronic, as to Trunkline's interpretation of the location/width and/or scope of the easement across [the Dicksons' property]." [DE 141 at 139]. Consistent with its four corners contract law theory, Trunkline objects to this request arguing that it expects Trunkline

to interpret the Right-of-Way Agreement—a legal conclusion reserved for the Court. However, Trunkline's argument puts the cart before the horse. Trunkline cannot unilaterally dictate the proper scope of discovery by producing only the documents it deems responsive based on its personal interpretation of the easement scope—the primary issue in Phase II of this litigation. Considering the Dicksons' fundamentally different theory of this case, RFP No. 13 is relevant to their claim. The Dicksons are entitled to all relevant information confirming or contradicting Trunkline's interpretation of the scope of the easement, subject to any proper objections, whether or not Trunkline believes that the information supports its own interpretation of the easement. Thus, Trunkline must produce a complete response to RFP No. 13.

On the other hand, Trunkline's delayed response to RFP No. 18 is understandable. As Trunkline notes and the Dicksons do not rebut, RFP No. 18[3] requires information "includ[ing] testimony and expert evidence (the deadline for which has not yet arrived)." [DE 151 at 19]. This Court has indicated that case management deadline, including expert deadlines, will be reset upon resolution of Plaintiffs' instant motions to compel. [DE 161]. As a result, Trunkline cannot yet produce responses to RFP No. 18 that require expert evidence. [*See* DE 161]. Moreover,

---

[3] RFP No. 18 states:
> To the extent that Trunkline claims that more than 33' from the center of the existing 100 Line is reasonably necessary for Trunkline to install additional pipelines per the Right of Way Easement, produce each and every document, report, memorandum and/or communication, whether written, oral and/or electronic, evidencing or establishing the basis for the claim.

[DE 141 at 140].

Trunkline has produced responsive documents identified to date, leaving nothing to compel now.

Finally, Trunkline objects to RFP No. 19 and its related ROG No. 15(2nd) to the extent that they appear to require Trunkline to create rather than produce responsive documents. The related requests ask for production of a document akin to a privilege log that documents all withheld information—not just privileged information—in terms of thirteen specified categories of information. Courts have regularly held that Rule 34 does not require a party to create a list that is not already in existence in response to a request for production. *See, e.g., Geng v. Spencer*, No. 1:19-cv-03139-JPH-MPB, 2020 WL 4557752, at *6 (S.D. Ind. Aug. 6, 2020). Notably, the Dicksons cite no authority to support creation of such a log beyond the scope of privilege logs required by Fed. R. Civ. P. 26(b)(5). Without good cause to impose such a burdensome demand upon any party, including Trunkline, the Court refuses to require Trunkline to respond to RFP No. 19 and ROG No. 15 (2nd) beyond the requirement of an ordinary privilege log.

### c.     Privilege Log

The Dicksons also seek sanctions, in the form of a waiver of discovery privilege, against Trunkline for failing to provide a privilege log since at least April 2019 despite having objected to several discovery requests on the basis of privilege. Under Fed. R. Civ. P. 26(b)(5),

> [w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing

information itself privileged or protected, will enable other parties to
assess the claim.

Courts are reluctant to order disclosure of privileged documents as a sanction for failure

to provide a proper privilege log. *Sann v. Mastrian*, No. 1:08-cv-1182-JMS-TAB, 2010 WL

4923900, at *1 (S.D. Ind. Nov. 29, 2010). In a case before this Court, the defendants did

not waive their privilege and relevance arguments despite a two-month delay in

objecting to the plaintiff's requests because there was no evidence that the defendants

acted in bad faith. *Zukley v. Town of Shererville*, CAUSE NO. 2:14-CV-347-JVB-JEM, 2016

WL 6994158, at *3 (N.D. Ind. Nov. 30, 2016). After all, "[d]iscovery sanctions may only

be imposed where a party displays wilfulness, bad faith, or fault." *Am. Nat. Bank & Tr.

Co. of Chicago v. Equitable Life Assur. Soc. of U.S.*, 406 F.3d 867, 879 (7th Cir. 2005) (internal

quotations omitted).

Here, Trunkline admits that it has not produced a privilege log. Specifically,

Trunkline states that it "has not withheld any documents or communications created

prior to the filing of this consolidated lawsuit on the basis of attorney-client privilege or

work product protection." [DE 151 at 23]. Trunkline then seems to concede that it has

not produced a privilege log related to documents or communications created after this

lawsuit was filed. [DE 151 at 24]. To justify this distinction between pre-lawsuit and

post-lawsuit privilege logs, Trunkline relies on (1) its counsel's experience in Indiana

federal courts that parties do not expect log entries for every privileged

document/communication created during a lawsuit; (2) Close Armstrong's

confirmation in this consolidated case that it does not expect Trunkline to prepare a

privilege log for post-filing documents and communications; (3) citations to opinions by district courts outside this Circuit affirming the pre- vs. post-filing distinction; (4) citation to *Novelty, Inc. v. Mountain View Mktg., Inc.*, 1:07-cv-01229-SEB-JMS, 2010 WL 11561280, at *6 (S.D. Ind. 2010) as an example without further explanation; and (5) allegations that the Dicksons' privilege logs are similarly incomplete.

　　None of these sources of support establish the pre- vs. post-filing distinction as clearly as Trunkline seems to think. Nevertheless, they do show that Trunkline's counsel was operating from an understanding—even if misguided—of the requirements of Rule 26(b)(5) as to privilege logs. Lacking any evidence of wilfulness, bad faith, or fault on Trunkline's part, waiver of privilege is not an appropriate sanction for its failure to comply with the applicable privilege log requirements in this Circuit. *See Am. Nat. Bank*, 406 F.3d at 879.

　　While the sanction of waiver may not be proper, Trunkline must still comply with its privilege log obligations and produce a privilege log reflecting documents or communications withheld on grounds of privilege or work product protection regardless of if they were created before or after the start of this lawsuit. *See Novelty, Inc.*, 2010 WL 11561280, at *3 ("[I]n the Seventh Circuit a claim of privilege must be made and sustained on a question-by-question basis; a blanket claim of privilege is unacceptable.") (internal quotations and citations omitted). To the extent their privilege log is deficient, the Dicksons must also supplement their privilege log accordingly.

　　Lastly, Trunkline suggests without specificity that preparing a privilege log will impose undue burden and expense outweighing any benefit from the log. The record to

20

date does not corroborate Trunkline's claim of undue burden. However, Trunkline can

seek relief from the required item-by-item listing on a privilege log in the form of a

protective order, especially in light of the Advisory Committee's Note on the 1993

Amendment to Fed. R. Civ. P. 26(b), which acknowledges the challenge that

voluminous privileged documents can pose. *See Novelty, Inc.*, 2010 WL 11561280, at *3.

### 5.    Summary of the Dicksons' Motion to Compel

As outlined above, the Dicksons' motion to compel [DE 141] must be granted in

part and denied in part. By **April 15, 2021**, Trunkline is **ORDERED** to produce:

(1) documents and information regarding the 31 Identified Easements and similarly situated properties in Washington Township, but not the entire State of Indiana;

(2) documents and information back to 1959 responsive to all RFPs except Nos. 8 and 11;

(3) records of actual physical inspections of the Dicksons' property, in both electronic and hard-copy form, as responsive to RFP No. 12 dating back to 1959;

(4) prior versions of documents as delineated in RFP No. 15 (2nd);

(5) complete responses to RFP No. 13;

(6) complete responses to RFP No. 19 and ROG No. 15 (2nd) ONLY to the extent consistent with Rule 26(b)(5)'s requirements for a privilege log.

Moreover, all parties are **ORDERED** to produce or supplement privilege logs to comply

with Fed. R. Civ. P. 26(b)(5) by **April 15, 2021**.

### B.      Close Armstrong's Renewed Motion to Compel [DE 158]

#### 1.      Relevant Background

Close Armstrong's discovery dispute with Trunkline follows a trajectory similar to the Dicksons' dispute. With the start of Phase II discovery, Close Armstrong renewed its original discovery requests. Trunkline's responses repeated objections to requests concerning similarly situated properties, Close Armstrong's property and Right-of-Way Agreement, and Trunkline's plans for future projects. From February until July 2020, the parties communicated extensively about these disputes. During that time, Trunkline supplemented its discovery responses twice, once on April 21, 2020, and again on June 29, 2020. Trunkline's supplemental responses reiterated its general objections to Close Armstrong's discovery requests on grounds including relevance, proportionality, and undue burden as well as its more specific objections related to "similarly situated" properties, its plans for future projects, and other issues. After multiple discussions trying to resolve the disputes without the Court's assistance, the parties reached an impasse leading Close Armstrong to file the instant Renewed Motion to Compel ("Renewed Motion").

Through its Renewed Motion, Close Armstrong asks the Court to order Trunkline to produce complete responses to its ROGs and RFPs.[4] Citing Fed. R. Civ. P. 37(a)(5), Close Armstrong also requests an award of reasonable expenses, including attorney fees, associated with litigation of the instant Renewed Motion.

---

[4] Specifically, Close Armstrong seeks to compel Interrogatory Nos. 2, 3, 5(d), 7, and 8, as well as Request for Production Nos. 1, 2, and 4-9.

The discovery dispute between Close Armstrong and Trunkline derives largely from the same contrasting theories of the case discussed in regard to the Dicksons' Motion to Compel—Trunkline's four corners contract theory vs. Close Armstrong's more equitable "reasonably necessary area" theory based upon other easements in the same area. The parties also interpret the Phase I Summary Judgment Order [DE 117] differently. Based on its understanding of the Summary Judgment Order, Trunkline refuses to produce information regarding expansion or modification plans, as it believes these plans' existence have no bearing on Trunkline's ability to maintain its rights under the Right-of-Way Agreement. On the other hand, Close Armstrong views Trunkline's future plans to modify to add to the 100 Line as relevant to determining whether the easement on their property has become subject to an equitable limitation or has become fixed by selection, use, or consent. In this context, the Court considers Close Armstrong's Renewed Motion.

### 2.    Similarly Situated Properties

As with the Dicksons, Trunkline's main discovery dispute with Close Armstrong involves the production of information concerning similarly situated properties.[5] Notably, only Close Armstrong's ROG No. 7 seeks information related to all of Trunkline's easements in Indiana while the remaining discovery requests seek information limited to the Close Armstrong property or Trunkline's easements in Washington Township, Starke County, Indiana. In its negotiations with Close

---

[5] The relevant discovery requests are Interrogatory Nos. 3, 5(d), 7, and 8, as well as Request for Production Nos. 2, 4-9. [DE 159].

Armstrong, Trunkline—as it did with the Dicksons—offered to produce documents on similarly situated properties located solely in Washington Township and the 31 Identified Easements. Close Armstrong rejected this offer just as the Dicksons did.

Yet nothing distinguishes Close Armstrong's request for information regarding all Indiana easements from the Dicksons' requests for information throughout Indiana. Moreover, Close Armstrong's reliance upon *Tishner* and Trunkline's internal practice of using neighboring easements to assess the scope of other easements is misplaced for all the reasons discussed above in relation to the Dicksons' Motion to Compel. Therefore, Close Armstrong has similarly failed to meet its Rule 26(b)(1) burden of demonstrating that information regarding all of Trunkline's Indiana easements is relevant to claims or defenses in this case. *See Vajner*, 2010 WL 4193030 at *2. Furthermore, the record does not suggest that discovery into the similarly situated properties in Washington Township and the 31 Identified Easements, which Trunkline has offered to produce, would cause harm enough to outweigh the Rule 26(b) presumption in favor of broad disclosure. *See id.* Accordingly, Trunkline need only produce information regarding the 31 Identified Easements and similarly situated properties in Washington Township in response to Close Armstrong's ROG No. 7.

### 3. Trunkline's Plans for Future Projects

Trunkline objects to Close Armstrong's discovery requests[6] to the extent that they call for information and documents relating to Trunkline's future plans for the 100

---

[6] Close Armstrong's ROG No. 5(d) and RFP Nos. 2 and 4-9 call for information regarding Trunkline's plans for the future, including the potential addition of a loop pipeline and other such expansion or alteration plans not currently in development.

Line, including whether they intend to modify the existing pipeline or install any additional pipelines.[7] This particular dispute tracks Close Armstrong's and Trunkline's disparate interpretations of the Phase I Summary Judgment Order closely. Close Armstrong emphasizes that Trunkline's future plans for the easement are probative of its course of dealing. In support, Close Armstrong argues that Trunkline's future plans are relevant to the question of what Trunkline believed it owned and if Trunkline compromised the scope of the easement by its actions. Said another way, Close Armstrong contends that course of dealing information could support an inference of agreement as to the width of the easement.

Close Armstrong is correct that the intentions of contracting parties can be exhibited more clearly by their actions rather than their words and that contracts can be impliedly modified by the conduct of the parties. *See Palmer v. Dosch*, 47 N.E. 176, 177 (Ind. 1987); *Skweres v. Diamond Craft Co.*, 512 N.E.2d 217, 220–21 (Ind. Ct. App. 1987). Additionally, evidence of an organization's routine practices is admissible to prove conformance with that practice on a particular occasion. Fed. R. Evid. 406. Thus, it is plausible that planning for the easement on Close Armstrong's property could offer insight into Trunkline's understanding of the scope of the easement.

Yet Trunkline contends that such plans are not relevant to the Phase II determination of the scope of the easement because the Phase I Summary Judgment Order already held that the plain language of the Right-of-Way Agreements gives

---

[7] Though several of the Dicksons' discovery requests potentially seek information regarding Trunkline's plans for the future, the Dicksons do not rebut (or specifically reference) Trunkline's contention in their briefing.

Trunkline "the right to lay additional pipelines that need not be parallel to the existing pipeline and the right to alter the course of its existing 100 Line." [DE 117 at 31]. Based on this interpretation, Trunkline essentially argues that the four corners of the Right-of-Way Agreement have already established that it retains the right to have future plans for the easement—whether those plans currently exist or not. Moreover, Trunkline directs the Court to Indiana's easement-fixing cases, which do not consider evidence of other agreements or course of dealing in determining the scope of a blanket easement. *See, e.g.*, *Town of Ellettsville v. Despirito*, 111 N.E.2d 987 (Ind. 2018); *Tishner*, 699 N.E.2d 731; *Rees v. Panhandle E. Pipe Line Co.*, 452 N.E.2d 405 (Ind. Ct. App. 1983).

As suggested above in discussing the Dickson's Motion to Compel, this is not the time for the Court to adopt one of the parties' theories of the case. The pertinent question now is whether discovery into Trunkline's future plans for Close Armstrong's, or any other property's, easements is relevant to determining whether Close Armstrong's easement "has become subject to an equitable limitation or fixed by selection, use, or consent under Indiana law . . . ." [DE 117 at 31]. Trunkline's plans for future pipeline alterations or additions on Close Armstrong's property, as requested in RFP No. 3, are relevant to that question. Additionally, the Court has already determined that information related to similarly situated easements throughout Washington Township, as requested in RFP Nos. 4–7, are relevant and discoverable. Therefore, Trunkline must produce information responsive to Close Armstrong's discovery requests regarding any plans that are currently in existence for future alterations to the

26

100 Line or new pipelines on Close Armstrong's property and similarly situated in Washington Township.

### 4.   Other Discovery Disputes

#### a.   ROG No. 2

Interrogatory No. 2 calls for Trunkline to "[s]tate the amount of money that was paid for the easement [it] claim[s] encompasses the 80-acre parcel in issue." [DE 159-2 at 4]. Close Armstrong contends this information is relevant to whether Trunkline actually paid to establish a vested right to the entirety of its property. In support, Close Armstrong cites to *Belusko v. Phillips Petroleum Co.*, 198 F. Supp. 140, 143–44 (S.D. Ill. 1961), which rejected application of the rule against perpetuities as to construction of a second pipeline on an Illinois property. In part, the court's conclusion was based upon its finding that whatever rights may have been created by an ambiguous right of way contract were vested "when the [contract] was delivered and the consideration therefor was paid." *Id.*

Trunkline objects to Close Armstrong's request arguing primarily that the adequacy of consideration is irrelevant to this case. Trunkline does not directly address Close Armstrong's concern about vesting other than to spurn any suggestion that its right to install additional nonparallel pipelines on its easement on Close Armstrong's property is not vested. This alone does not establish that the vesting issue is of such marginal relevance that the burden of responding to Close Armstrong's request outweighs any benefit it may gain from the requested information. *See Vajner*, 2010 WL 4193030, at *2. Thus, the actual amount paid for the easement is relevant.

Moreover, Trunkline has produced business records from which it contends Close Armstrong can determine the actual amount paid for the Close Armstrong easement. Specifically, Trunkline directed Close Armstrong to the Right-of-Way Agreement itself and a copy of a receipt reflecting payment to the grantees. On the surface, Trunkline's production of business records is reasonable under Fed. R. Civ. P. 33(d) because "the burden of deriving or ascertaining the answer will be substantially the same for either party." The particular records produced by Trunkline here, however, do not include clear evidence of the actual amount paid for the easement.

While portions of the Right-of-Way Agreement are blurred and difficult to decipher, it appears to call for a rate of pay of "One Dollar ($1.00) per lineal  rod" of pipe laid. [DE 159-3 at 17–22]. Yet the Agreement does not state the number of lineal rods on the property at issue or the total amount of consideration paid to the landowners.

The alleged receipt does not help to clarify the amount of consideration actually paid. The document produced is a handwritten receipt on a form titled "RIGHTS OF WAY DRAFT: AT SIGHT." [DE 159-6 at 16]. The form itself was modified with three, presumably hand drawn strikethroughs. Moreover, the handwriting on the form is faded while parts of it are obstructed by a "NON-NEGOTIABLE" stamp. From this, it is not evident the exact amount paid per the receipt.

Taken together, the Right-of-Way Agreement and the receipt, which are difficult to decipher and reconcile, could support different conclusions as to the agreed amount of consideration and whether the actual amount paid constituted full payment. As such,

Trunkline's production of these documents does not sufficiently answer ROG No. 2 under Fed. R. Civ. P. 33(d). As a result, Trunkline must either produce further information responsive to Close Armstrong's ROG No. 2 or confirm that it possesses or controls no further responsive information.

### b.    ROG No. 3

Interrogatory No. 3 asks Trunkline to "[s]tate if any physical modifications have been made to the easement in dispute or have been made to any of the Trunkline easements that traverse Washington Township, Starke County, Indiana, and state the parcel number and the modification, since the easement was originally granted." [DE 159-3 at 4]. Trunkline objected to answering the interrogatory as it sought information concerning properties other than Close Armstrong's then answered as to Close Armstrong's property that "the Right-of-Way Agreement expressly applies to the entirety of Plaintiff's real estate, and has not been amended." [*Id.*].

Close Armstrong argues that Trunkline has misread ROG No. 3 and thereby has evaded a complete response by interpreting the request in an artificially restrictive and hypertechnical manner. Indeed, Trunkline's objection focuses on modifications to the Right-of-Way Agreement, which is a written contract, rather than physical modifications the easement, or land, itself. This interpretation restricts the scope of ROG No. 3 too far. Moreover, discovery regarding the Washington Township easements has already been deemed relevant to Phase II issues as defined by the Summary Judgment Order. Therefore, Trunkline must produce a complete response to ROG No. 3, including but not limited to pipe installations, burial of stumps, and changes in the route of the

29

pipe, regarding Close Armstrong's property and other similarly situated properties in Washington Township.

### c.    RFP Nos. 4–7

Discussed above, Close Armstrong's RFP Nos. 4–7 seek information regarding Trunkline's plans for future projects on Close Armstrong's property and on similarly situated properties in Washington Township. Beyond these general issues of relevancy already resolved, Trunkline questions the temporal limitations included or omitted in those requests. Additionally, Trunkline contends the requests are overly broad as they use the word "all" related to the requested information, regardless of their effect on this lawsuit. Both objections are misplaced.

First, the purpose of Phase II in this case is to determine whether the easements at issue have somehow been fixed by practice. Trunkline contends that Close Armstrong is seeking information that exceeds a reasonable time period but does not offer any suggestion as to what might constitute a reasonable time period. Moreover, the practice of the parties, including events represented in RFP Nos. 4, 6–7, during the entire life of the relevant easement is clearly relevant to whether or not the scope of the easement was fixed by practice or another equitable consideration. Without any further showing of undue burden from production of this information, Close Armstrong is entitled to information responsive to RFP Nos. 4, 6–7 dating back to the origination of the easement in 1959. However, Trunkline need only produce documentation of modifications for its similarly situated Washington Township easements in the past fifty years based on the plain language of RFP No. 5.

Second, Trunkline objects to RFP Nos. 4–7's requests for "all" documents but based solely on its argument that information about Trunkline's easements on other properties in Washington Township is not discoverable. As previously discussed, the Court has found that discovery relating to properties in Washington Township is relevant and proportional to Close Armstrong's claims and defenses. Without any other argument, Trunkline has not shown that the challenged "all" language in RFP Nos. 4–7 is overbroad.

### 5. Conclusion on Close Armstrong's Renewed Motion

As outlined above, Close Armstrong's Renewed Motion [DE 158] must be granted in part and denied in part. By **April 15, 2021**, Trunkline is **ORDERED** to produce documents or information responsive to Close Armstrong's discovery requests:

(1) regarding the 31 Identified Easements and similarly situated properties in Washington Township, but not the entire State of Indiana;

(2) regarding any plans that are currently in existence for future alterations to the 100 Line or new pipelines on Close Armstrong's property and similarly situated in Washington Township;

(3) in ROG No. 2 or confirm that no further responsive information is available;

(4) in ROG No. 3, including but not limited to pipe installations, burial of stumps, and changes in the route of the pipe, regarding Close Armstrong's property and other similarly situated properties in Washington Township;

(5) in RFP Nos. 4, 6–7 dating back to the origination of the easement in 1959;

(6) in RFP No. 5 dating back fifty years as requested.

III.   CONCLUSION

As explained in detail above, the Court **DENIES** Trunkline's Motion for Leave to File Surreply in opposition to Close Armstrong's Renewed Motion to Compel. [DE 164]. The Court also **GRANTS IN PART** and **DENIES IN PART** the Dicksons' Motion to Compel [DE 141] and Close Armstrong's Renewed Motion to Compel [DE 158]. Trunkline shall supplement its production in response to the Dicksons' and Close Armstrong's discovery requests as specified above by no later than **April 15, 2021**. The Court **DENIES** Plaintiffs' requests for attorney fees under Fed. R. Civ. P. 37(a)(5). The parties are all **REMINDED** that Fed. R. Civ. P. 26(e) and this Court's Scheduling Order requires supplementation of all discovery responses every six weeks until trial. [*See* DE 123 at 2]. All parties are **ADMONISHED** not to interpret any part of this Opinion and Order as authority for a generalized fishing expedition.

Lastly, finding good cause as required under Fed. R. Civ. P. 16(b)(4) and consistent with this court's Order dated August 21, 2020, the Court now **GRANTS IN PART** the parties' Joint Motion [DE 160] to set new case management deadlines. The Court's Rule 16(b) Scheduling Orders related to Phase II of this litigation [DE 123, DE 139] are **AMENDED** as follows:

- Mediation Deadline: **June 1, 2021**

- Initial Expert Disclosure Deadline: **June 8, 2021**

- Rebuttal Expert Disclosure Deadline: **July 20, 2021**

- Non-dispositive, discovery-related motion Deadline: **September 15, 2021**

- Completion of all fact and expert discovery: **October 15, 2021**

- Dispositive Motion Deadline: **November 15, 2021**

In light of this Court's and the parties' obligations under Fed. R. Civ. P. 1 "to secure the just, speedy, and inexpensive determination of [this] action," no amendments to this Scheduling Order will be granted absent a showing of an extraordinary reason. Good cause will not be sufficient to constitute an extraordinary reason.

      **SO ORDERED** this 31st day of March 2021.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge
