UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CLOSE ARMSTRONG LLC, <br><br> Plaintiff, <br><br> v. <br><br> TRUNKLINE GAS COMPANY LLC, <br><br> Defendant. | CAUSE NO. 3:18-CV-270 DRL |
| CONSOLIDATED WITH: | |
| RANDALL L. DICKSON and JAYMIE L. DICKSON, <br><br> Plaintiffs, <br><br> v. <br><br> TRUNKLINE GAS COMPANY LLC, <br><br> Defendant. | CAUSE NO. 3:18-CV-494 DRL |

OPINION AND ORDER

Much has been written about this case leading to the upcoming bench trial. Today the court addresses the use of certain opinion witnesses. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Trunkline Gas Company, LLC seeks to exclude James Anspach, a proposed expert of Close Armstrong, LLC and Randall and Jaymie Dickson. The landowners seek to exclude Trunkline's proposed experts, Dr. Alex Baumguard, Mark Zellman, and Steve Enerson. The landowners inform the court that they will not call Mr. Anspach at trial, so that motion is now moot. The court grants and denies in part the landowners' motion.

STANDARD

A witness may testify in the form of an expert opinion when (1) the witness is "qualified as an expert by knowledge, skill, expertise, training, or education;" (2) the testimony is "based on sufficient facts or data;" (3) the testimony is "the product of reliable principles and methods;" and (4) the witness

has reliably applied "the principles and methods to the facts of the case" in such a way that the testimony will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Although analysis under Rule 702 always remains flexible, *Daubert*, 509 U.S. at 594, the fundamental considerations of what makes expert opinion admissible are well understood. *See Constructora Mi Casita, S de R.L. de C.V. v. NIBCO, Inc.*, 448 F. Supp.3d 965, 970-71 (N.D. Ind. 2020).

In short, the Federal Rules of Evidence strike a balance between two competing concerns: apprehension of the free-for-all admission of unreliable theories that might baffle juries and a "stifling and repressive scientific orthodoxy" that might inhibit new truths or legitimate cases. *Daubert*, 509 U.S. at 596. While preserving that balance, the *Daubert* analysis is not a substitute for crossexamination, contrary and compelling evidence, and other methods inherent in federal trials to challenge shaky evidence. *Id.*; *see also Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 766 (7th Cir. 2013).

In a bench trial, the court "need not conduct a *Daubert* (or Rule 702) analysis before presentation of the evidence, even though [it] must determine admissibility at some point." *Kan. City S. Ry. Co. v. SNY Island Levee Drainage Dist.*, 831 F.3d 892, 900 (7th Cir. 2016). "*Daubert's* requirements of reliability and relevancy continue to apply in a bench trial." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 760 (7th Cir. 2010). The analysis in bench trials nevertheless considers that "the usual concerns of the rule—keeping unreliable expert testimony from the jury—are not present in such a setting, and [the] review must take this factor into consideration." *Id.* When the court serves as a factfinder, it may admit the evidence "subject to the ability to later [] exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702." *In re Salem,* 465 F.3d 767, 777 (7th Cir. 2006). Still, the proponent of expert testimony must establish its admissibility by a preponderance of the evidence. *Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019).

DISCUSSION

The court has ruled on two summary judgment motions that provide the background for this case. *See Close Armstrong, LLC v. Trunkline Gas Co., LLC*, 667 F. Supp.3d 908 (N.D. Ind. 2023); *Close Armstrong, LLC v. Trunkline Gas Co., LLC*, 434 F. Supp.3d 658 (N.D. Ind. 2020). The only issue remaining for trial is what corridor should be recognized as reasonable and necessary for Trunkline's current use of the 100 Line. *See Close Armstrong*, 667 F. Supp.3d at 938. The landowners move to exclude three of Trunkline's proposed expert witnesses.

First, they seek to exclude Dr. Alex Baumguard and Mark Zellman—coauthors of a single report. By way of introduction, given that the landowners never argue a lack of credentials, Dr. Baumguard has a bachelor's degree in geological engineering from the University of British Columbia, a master's in environmental engineering from the Imperial College, London, and a doctorate in geotechnical engineering from the University of Cambridge. He is a geotechnical engineer and has consulted internationally on pipeline risk assessment and management. He maintains memberships in professional engineering associations and has published over fifteen times. Dr. Baumguard's wide-ranging experience includes serving as project manager, engineer, consultant, and expert witness.

Mark Zellman has a bachelor's degree in environmental geoscience from Indiana University of Pennsylvania and a master's in geographical information systems and remote sensing from the University of Pittsburgh. In over twenty years of experience, he has worked as a senior geologist at BGC Engineering and completed a graduate fellowship at the United States Department of Energy. He has published over a dozen times and has served as a project manager and lead geologist on pipeline failure projects.

The landowners object to the substance of their opinions, arguing that the opinions lack a factual basis, and otherwise are speculative or don't fit the remaining question in the case. Dr. Baumguard and Mr. Zellman authored the "BGC Report" together. If allowed, they would opine about the soil conditions of the properties, the presence of groundwater on the properties, the history of their use, and the impact

3

these conditions have on the Line 100 corridor [262-1 at 12-25]. Their report's punchline is that the land conditions surrounding the pipeline "do not present normal or typical ground conditions, especially when the ditches are blocked, and the properties are flooded" [*id.* 21]. More replete, they opine that there is shallow ground water and muck soil on the properties, and that raised groundwater levels, soil types, and potential flooding increase the difficulty to access, maintain, repair, and replace pipelines [*id.* 21-25]. They anticipate the need to address future changes or future trenching [*id.*].

The landowners also object to Steve Enerson. Mr. Enerson, currently employed by Big Inch Fabricators Construction, has worked in the pipeline industry for more than four decades, beginning as a laborer and working his way up to management. In his years working on pipelines, he has made decisions about how to install pipelines in areas with mucky soil conditions. He has worked for over a dozen major pipeline contractors and brings experience working on the 100 Line, albeit in different areas than the properties at issue.

Mr. Enerson's proposed testimony focuses on his experience laying pipelines in unfavorable soil conditions. His report includes information about the equipment used, the excavation process, and the complications mucky soil causes [*id.* 79-81]. He also submitted a diagram of a typical excavation [*id.* 82]. As with Dr. Baumguard and Mr. Zellman, the landowners argue that Mr. Enerson's opinions are speculative, are not based on sufficient facts or data, and don't fit the case.

Among the panoply of purposes reserved in the bundle of rights that is this floating easement, the court will judicially fix only what is reasonably necessary to accommodate Trunkline's exercised use of that portion of the easement devoted to its 100 Line today and the company's needs for ingress and egress. It would not seem difficult to see that use includes inspection abilities and reasonably foreseeable maintenance, whether step-by-step maintenance plans have been drawn up or an emergency project request has been circulated. The court also cannot say at this stage that reasonably likely excavation isn't realistically connected to maintenance, use, or safety, so evidence or testimony about the complexities

4

surrounding the 100 Line may well assist the court in determining what is reasonable and necessary for a corridor. In short, such opinion fits the case at this preliminary stage.

The only opinion that at this point seems extraneous is whether placement of the properties in the wetland conservation program will exacerbate the challenges otherwise posed by the geologic or geotechnical conditions. Because the easements float across the properties for future uses, *see Close Armstrong*, 667 F. Supp.3d at 938, the landowners appear to concede that they cannot qualify for a wetland conservation easement. The court need not hear testimony concerning the impact of something that will not materialize.

The landowners also challenge the data on which these proposed experts posit their opinions. "An opinion witness must have a sound factual basis to be declared an expert." *Scci Hosps. of Am., LLC v. Home-Owners Ins. Co.*, 571 F. Supp.3d 942, 950 (N.D. Ind. 2021). Even if eminently qualified, experts cannot offer opinions based solely on their say-so. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Expert testimony must be based on sufficient and known facts. Fed. R. Evid. 702(b), 703; *see Daubert*, 509 U.S. at 590; *see, e.g., Wasson v. Peabody Coal Co.*, 542 F.3d 1172, 1176 (7th Cir. 2008); *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904-05 (7th Cir. 2007).

*Daubert* isn't meant to limit expert testimony to "conclusions [that] are unimpeachable." *Stollings*, 725 F.3d at 765. A "valid and properly applied methodology" may leave conclusions open to "doubt"— that doubt that good trial lawyers explore in crossexamination and that the factfinder weighs and credits as it sees fit. *Id.* at 766; *see Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 807 (7th Cir. 2013). Rule 702 requires that expert opinions have "analytically sound bases so that they are more than mere speculation." *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000) (quotations and citation omitted).

The court's gatekeeping role doesn't make it today the trier of all facts that relate to an opinion witness's testimony. *Stollings*, 725 F.3d at 765. The "soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be

5

determined by the trier of fact"—and that will be the court at the bench trial, but not at this initial stage. *Smith*, 215 F.3d at 718. Even then, the court may revisit this ruling in the context of a full record. *Salem*, 465 F.3d at 777.

The landowners argue that the proposed opinions are not based on any specific data about a real project needed on the properties. They say the opinions focus on potential future maintenance, and they contend that what Trunkline might need by way of maintenance, excavation, or other capabilities isn't fairly evidence of what the company will need in the future for some unknown purpose or unknown conditions. Without an actual project, the landowners suggest the opinions will be speculative. In short, these are arguments the landowners may make at trial, but they materially go to weight, not admissibility.

For today's purposes, Dr. Baumguard and Mr. Zellman explain the bases for their opinions. They conducted field reconnaissance onsite [267-3 at 1 (PDF 6)], including taking soil samples and measurements [267-3 at 3-4 (PDF 8-9)]. They then tested the soil and reported the lab results [267-3 at 5 (PDF 10)]. From these assessments, they drew conclusions about what they anticipate calling atypical ground conditions that bear on pipeline maintenance [262-1 at 21, 23]. They have historical information and industry standards. They relied on scientific testing and observation to reach their conclusions, not merely their say-so. Dr. Baumguard and Mr. Zellman supported their assertions and inferences with methods that on this record lend evidentiary reliability. *See Daubert*, 509 U.S. at 590. Whether the court ultimately will afford their testimony weight must be reserved for trial.

Similarly, Mr. Enerson's testimony is supported by "a reliable basis in the knowledge and experience of the relevant discipline." *Kumho Tire*, 526 U.S. at 149. Courts "consider a proposed expert's full range of practical experience." *United States v. Garcia Parra*, 402 F.3d 752, 758 (7th Cir. 2005); *see also Constructora*, 448 F. Supp.3d at 970 ("Experts draw their truths from specialized experience confessedly foreign in kind to the jury's own."). "An expert's testimony is not unreliable simply because it is founded on his experience rather than on data." *Metavante,* 619 F.3d at 761. Mr. Enerson has relevant experience

6

in pipeline excavation, particularly having completed excavations in "mucky soils" similar to the conditions of the easement here [267-2 Tr. 126-27]. His experience gives him a reliable basis to explain to the court how excavations and maintenance would be conducted and the typical width needed, as well as the impact of mucky soil. That information is all based on his personal experience working in similar conditions on similar projects, not mere speculation [267-2 Tr. 64-65].

Last, the landowners call opinions from Trunkline's experts about the reasonable and necessary width for this corridor late. They say this only occurred when the landowners deposed them. The landowners argue that Trunkline violated Rule 26 and prejudiced them because the proposed testimony about the necessary width comes from depositions taken after initial expert disclosures, without supplemental opinions. The landowners contend that, had they known the specific widths proposed, they would have been able to obtain rebuttal experts or consult with other experts before the depositions. Specifically, they object to the opinion that the 100 Line should be fixed at 141 feet. Trunkline responds that it had no duty to disclose supplemental information that the landowners solicited in a deposition nearly two years ago. Trunkline adds that the landowners had plenty of time to use the information and cannot claim unfair surprise and prejudice now.

Rule 26 requires witnesses retained to provide expert testimony to disclose a report containing "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26 (a)(2)(B)(i). The rule includes a duty to supplement changes to an expert report or deposition. Fed. R. Civ. P. 26(e); *see Johnson v. C.R. Bard, Inc.*, 77 F.4th 641, 646 (7th Cir. 2023). Rule 37 requires the exclusion of information a party failed to disclose "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The exclusion of non-disclosed evidence is automatic and mandatory . . . unless non-disclosure was justified or harmless." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004); *accord Karum Holdings LLC v. Lowe's Cos.*, 895 F.3d 944, 951 (7th Cir. 2018). The court considers four factors: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability

7

of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). These factors lead the court to conclude that nondisclosure of the exact anticipated width here was harmless and not prejudicial.

For one, proposed experts may revise or clarify opinions under Rule 26, "so long as the testimony is not a departure from the 'general scheme' of the expert's report." *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods.*, 250 F. Supp.3d 244, 261 (W.D. Ky. 2017); *see also McHugh v. Olympia Entm't, Inc.*, 37 F. Appx. 730, 735 (6th Cir. 2002) (citing *Johnson v. H.K. Webster, Inc.*, 775 F.2d 1, 7 (1st Cir. 1985)). That is not least true when opposing parties invite the witness to expound on his opinions in deposition. The testimony in question, the exact width needed for the maintenance of the 100 Line, was in keeping with their reports and a natural outgrowth. Both reports noted that soil conditions present challenges that require more space for Trunkline [262-1 at 80-81 (Enerson report noting that mucky soil requires more space for excavations for "dewatering"); 262-1 at 21 (BGC report describing conditions as atypical)]. When asked to give an exact width at deposition, each witness responded with distances greater than the normal anticipated width, consistent with their earlier reports [267-2 Tr. 95; 267-5 Tr. 160-61]. The better practice might be to memorialize key outgrowths of opinions in a supplemental report even thereafter, but the court cannot say here the landowners suffered prejudice or surprise. *See* Fed. R. Civ. P. 26 (e)(1)(A) (requiring supplementation "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing").

Indeed, the landowners had the ability to crossexamine the witnesses during the deposition on the basis for this width opinion in light of the reasons these proposed experts gave in their reports for saying the company needed this width; and the landowners have had nearly two years to fashion a rebuttal opinion if they really thought it necessary before the eve of this trial. The landowners discovered this information in February 2022, during the discovery period. The landowners did not file a motion to

8

extend discovery to address the issue or to extend or reopen time for supplemental reports. Trunkline is not adding new opinions on the eve of trial, in a manner that would prevent the landowners from conducting effective crossexamination. *See* Fed. R. Civ. P. 26 advis. comm. n. (1970). The trial will not be disrupted by allowing this brief testimony, and there is no evidence on this record of bad faith on Trunkline's part. The court thus materially denies the motion to exclude.

## CONCLUSION

Accordingly, the court DENIES AS MOOT Trunkline's renewed motion to exclude Mr. Anspach [260] and DENIES IN PART the landowners' motion to exclude Dr. Baumguard, Mr. Zellman, and Mr. Enerson [262], except as to any testimony on the impact of a Natural Resources Conservation Service wetlands easement on the 100 Line. The court also GRANTS Trunkline's motion to seal the landowners' motion to exclude [263], with a redacted version of the expert report available on the record [263-1].

SO ORDERED.

March 6, 2024                                        *s/ Damon R. Leichty*
                                                     Judge, United States District Court

9